**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No. 26-mj-88** |
| **TIMOTHY JAMES HETZEL** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

### EMERGENCY MOTION TO STAY DEFENDANT'S RELEASE
### AND *DE NOVO* REVIEW OF MAGISTRATE JDUGE'S RELEASE ORDER

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, seeks this Court's review of the release order by the Honorable Magistrate Judge G. Michael Harvey issued on May 29, 2026. The Government first requests that the Court stay Magistrate Judge Harvey's order releasing the Defendant, Timothy James Hetzel. The Government further requests that the Court grant a *de novo* review of Magistrate Judge Harvey's denial of the Government's motion for pre-trial detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving a firearm) and under 18 U.S.C. § 3142 (f)(2)(A) (serious risk of nonappearance). This Court has the authority to grant a stay to consider this emergency *de novo* review of the Magistrate Judge's order of release[1].

Hetzel actively armed himself with a loaded firearm—specifically a ghost gun—while aboard a Metro train full of people traveling during a Saturday afternoon. In front of other passengers, Hetzel removed a firearm from his backpack, loaded the magazine with 13 rounds of ammunition, inserted the magazine back into the firearm and, once armed and ready, placed it back into his backpack. Hetzel later admitted to detectives in an interview that he knew he could

---

[1] This matter was recently indicted on May 29, 2026. As of this filing, there is no District Court Judge assigned. The government respectfully requests that this appeal be heard before the Honorable Chief Judge Boasberg.

not have a firearm. Hetzel's history is also riddled with non-appearances and bench warrants. Considering the factors set forth under 18 U.S.C. § 3142(g), there are no conditions or combinations of conditions that will reasonably assure the safety of our community or his appearance.

## FACTUAL BACKGROUND

On May 16, 2026, at approximately 4:22 pm, law enforcement responded to a call from a fellow metro passenger who reported that an individual was armed with a weapon aboard Metro Train ID #115, rail car number 7451. According to the witness who made the initial observation, Hetzel opened his backpack, took out the firearm, proceeded to load the magazine with ammunition, inserted the magazine back into the firearm and placed it back into his black backpack. The caller described the individual as a white male, wearing a black shirt, Khaki pants, cowboy boots, and carrying a black bookbag.



*Figure 1: WMTA surveillance of what appears to be Hetzel reaching into a backpack.*



*Figure 2: A screenshot from WMTA surveillance, depicting Hetzel matching the description provided by the witness: black shirt, Khakis, cowboy boots wearing a black backpack.*

Upon receiving this information law enforcement was able to contact dispatch for the next Metro stop rail car 7451 was scheduled to stop at. Accordingly, law enforcement responded to Woodley Park Metro Station located at 2622 Connecticut Ave NW, Washington D.C. at approximately 4:42pm that afternoon. With the description that was provided, law enforcement was able to locate the individual and identify him Timothy James Hetzel via his Maryland Learner's permit.



***Figure 3: A screenshot from an officer's body worn camera of when the officer approached Hetzel aboard the Metro at Woodley Park Station.***

Hetzel was then asked to step off the Metro and placed in handcuffs. Officers took Hetzel upstairs to the outside platform where they conducted a pat down of Hetzel's outer garments and his backpack. At this point, the pat down yielded no results. Law enforcement then contacted the caller who reported the incident. Law enforcement brought the caller at approximately 6:00 pm, to the Woodley Park Metro Station via a Metro cruiser to conduct a "show up." Under two hours, the caller who witnessed and reported the incident was able to confirm that the individual at Woodley Park Metro Station was the same individual from the train and recognized the same backpack.

After this confirmation, law enforcement then searched Hetzel's black bookbag and recovered a teal-covered firearm in the pocket of a brown jacket that was folded, in addition to ammunition.



*Figure 3: The ghost gun recovered from Hetzel's backpack with 13 rounds of 9mm ammunition in the inserted magazine and an additional 57 rounds of 9mm ammunition.*

Following the discovery of the firearm and ammunition, Hetzel was placed under arrest and brought to Metropolitan Police Department 2nd District for processing. Hetzel was also provided with his *Miranda* rights and was interviewed by the Criminal Investigation Division detectives. During the interview, Hetzel claimed that he found the firearm several months ago and that despite knowing that was prohibited from having a firearm, he kept it anyways. Hetzel also claimed he was unsure if the firearm was operable[2] or even safe to use.

## ARGUMENT

### I.    This Court Has the Authority to Grant the Motion to Stay Release Pending a *De Novo* Review

The power to stay an order of release is directly related to a district court's authority to review a release order of a magistrate judge. *See, e.g.*, *United States v. Brigham*, 569 F.3d 220, 230 (5th Cir. 2009) ("given that the issue being reviewed involves a person's release from custody pending further legal proceedings, the absence of stay authority could render the district court's

---

[2] The firearm was later test fired by ATF and deemed operable.

review power illusory.").   An alternative interpretation would risk allowing the charged defendant the opportunity to "harm[] the community or disappear[] by the time the district court's ruling is rendered and detention is ordered" if the district court determines to order the defendant detained. *Id.*; *see also United States v. Salazar-Andujo*, 599 F. Supp. 3d 491, 494 (W.D. Tex. 2022); *United States v. Rosales-Villegas*, No.: 2:23-cr-00044-GMN-VCF, 2023 U.S. Dist. LEXIS 59776, at *5-6, 7 n.1 (D. Nev. Apr. 4, 2023) ("The Court's decision is also based on unanimous caselaw. As the Government notes, "stays of release are so commonplace and uncontroversial that they are often relegated to a sentence or two in the procedural history of an opinion on the merits of the detention decision." (Resp. 3:9-24) (collecting cases).

In *United States v. Abass*, 25-CR-00079 (TSC), ECF No. 12 (April 11, 2025), Magistrate Judge Faruqui indicated that although magistrate courts typically suspend an order of release pending the government's request for *de novo* review of the Magistrate Judge's release order, that the Court would no longer do so under the four factors articulated in *Nken v. Holder*, 556 U.S. 418 (2009).  Here, the government is not seeking an extraordinary length of time in which to have the Court consider the merits of a stay which will require significant, detailed briefing, but rather, an emergency stay to present the merits of the requested detention to the district court judge.

Rather, the government seeks a brief administrative stay of the order of release, and as such, the request should not be analyzed under the *Nken* factors.  As this Circuit has noted, "[t]he purpose of [this] administrative stay is to give the court sufficient opportunity to consider the merits of the motion for a stay pending appeal."  *Cobell v. Norton*, No. 03-5262, 2004 WL 603456, at *1 (D.C. Cir. Mar. 24, 2004).  Such a stay, as the Supreme Court noted recently in *United States v. Texas*, 144 S. Ct. 797, 798 (2024), "buys the court time to deliberate" and does not "typically reflect the court's consideration of the merits." *Id.* at 798 (Barret, J., concurring). District courts

have recognized that administrative stays are also applicable in seeking emergency relief, including in the District of Columbia. *See, e.g.*, *Dellinger v. Bessent*, 2025 WL 450488 (D.D.C. Feb. 10, 2025); *National Council of Nonprofits v. Office of Management & Budget*, 2025 WL 314433 (D.D.C. Jan. 28, 2025); *Order, Texas v. Department of Homeland Security*, No. 24-CV-306 (E.D. Tex. Aug. 26, 2024). As these courts have recognized, the "[t]he authority for an administrative stay arises from the All Writs Act and a court's inherent authority to manage its docket." *Dellinger*, 2025 WL 450488 (quoting *Order, Texas,* No. 24-CV-306, at 2).

## II.    *De Novo* Review of the Magistrate's Release Order

As an initial matter, a defendant must be detained pending trial, if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(f)(1). The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). In contrast, "[a] determination that an individual is a flight risk must be supported by a preponderance of the evidence." *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019).

Further, Title 18, U.S.C. § 3145(a) states:

**(a) Review of a release order –** If a person is ordered released by a magistrate, …

> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release
> . . .

The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the magistrate judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer

7

and argument. It may take additional evidence from new witnesses or consider arguments not previously raised.

In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.  As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .

See S. Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182,  3195-3196.[3]

---

[3] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

See S. Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

There are four factors under Section 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, the government respectfully submits that there is no condition, or combination of conditions, that would assure the safety of the community or the defendant's appearance at future proceedings.

### A.  The Nature and Circumstances of the Offense Charged

The nature and circumstances of the offense strong favor detention. Hetzel knowingly carried a privately made, un-serialized "ghost gun" aboard public transportation and actively loaded the weapon while surrounded by members of the public, including children. Ghost guns present a unique danger to the community because they are untraceable firearms that lack serial numbers. This makes it difficult for law enforcement to trace such firearms that may be frequently associated with criminal activity.

Moreover, and gravely concerning, is the environment in which this offense occurred. While aboard a crowded commuter train filled with passengers during normal public transit operations, Hetzel removed a firearm, loaded the magazine, and inserted the loaded magazine back into the firearm. He then returned the loaded weapon to his backpack. This was a deliberate series of actions carried out in a confined public setting where any discharge—whether intentional, accidental, or caused by mechanical malfunction—could have resulted in catastrophic consequences for innocent commuters. As a threshold matter, the Court has repeatedly held that possession of a loaded firearm poses a risk of danger to the community. *See, e.g., United States v. Howard*, No. 20-mj-181 (BAH), 2020 U.S. Dist. LEXIS 172978, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a firearm in public where other people are congregated, as

alleged, poses an inherent risk of danger to the community."); *United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public.").

Compounding the danger, Hetzel later claimed to detectives in an interview that he was uncertain whether the firearm was even safe to operate. Yet despite allegedly believing the firearm was potentially destructive or unstable, he nevertheless chose to handle and load the firearm aboard a train full of passengers.

### B. Weight of the Evidence Against the Defendant

The firearm and the additional ammunition were recovered inside the black backpack that Hetzel was wearing when officers detained him. The recovery of that firearm and ammunition was recorded by responding officers' body worn camera footage. Thus, this is a strong and clear case of possession. Even further, Hetzel later admitted to detectives during an interview that he found the firearm several months ago and kept it. He also admitted to taking the ammunition from his father at some point and keeping those as well. As this Court has noted, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194 at *10. Because that is true here, the strength of the evidence against Hetzel also favors detention.

### C. History and Characteristics of the Defendant

Although Hetzel's criminal history is somewhat short, he still has a record. Hetzel was convicted of the following:

- In 2018, Hetzel was convicted in Stafford County Circuit Court, Virginia, case number

CR16001159-00 of a felony offense for Stolen Property with Intent to Sell. For that crime, he received a sentence of 2 years, with 1 year and 2 months suspended, and 5 years' probation. In that case, Hetzel violated the terms of his probation, and he was revoked on June 19, 2020, and sentenced to 10 months confinement.

- In 2018, Hetzel was also convicted in Stafford County Circuit Court, Virginia, case number CR17001263-00 of a felony offense for Failure to Appear on a Felony Offense. For that crime, he received a sentence of 12 months, fully suspended, and 5 years' probation.

- In 2013, Hetzel was convicted in Montgomery County, Maryland case number 121739C for theft, $1,000 to $10,000. For that offense he received 3 years of supervised probation and a fine. Notably, there were multiple bench warrants and probation violations in that case.

While Hetzel's criminal history does not necessarily include crimes of violence, it does give pause for concern and remains highly relevant to the Court's attention. His history demonstrates a continuing pattern of criminal conduct, disregard for the law, and an unwillingness to conform his behavior to the rules and exceptions of society. Now his actions have escalated to something more egregious and dangerous.

Moreover, Hetzel currently has an outstanding warrant in Montgomery County, Maryland case number D-06-CR-25-000712, for failing to appear in District Court for trial that was scheduled for October 27, 2025. In that case, he was charged with theft, less than $100; theft, $100 to under $1,500; and theft scheme: $100 to greater than $1,500. Additionally, he has another two active bench warrants for traffic violations in Montgomery County from October 27, 2025, and November 17, 2025. Although these matters may be less serious in nature, they nevertheless

establish a repeated pattern of noncompliance with judicial proceedings and lawful obligations. Collectively, these repeated failures to appear show that Hetzel consistently disregards the court's authority and legal process.

### D.  Danger to the Community and Risk of Nonappearance

Hetzel's conduct demonstrates that he poses a clear danger to the community. He removed a firearm from his backpack while aboard a Metro train. Loaded the magazine with 13 rounds of ammunition. Inserted the magazine back into the firearm. This was not a passive possession or momentary handling of a weapon. Rather, Hetzel deliberately armed the firearm while traveling on a commuter train occupied with passengers, including children, thereby creating an obvious and unacceptable risk to everyone onboard. Despite Hetzel's status as a convicted felon and his admitted awareness that he was prohibited from possessing a firearm, he nevertheless chose to arm himself in a crowed public setting. His own statements to law enforcement demonstrate his own awareness of the danger inherent in his conduct. During an interview with detectives, Hetzel admitted that he knew should not possess a firearm but did so anyways.

Equally concerning are his statements during the interview regarding the condition of the firearm. He purported that found the firearm, restored it, but ultimately was unsure whether the firearm was operable and feared pulling the trigger because it could backfire or explode. Such statements underscore the recklessness of his actions. If Hetzel genuinely believed the firearm was unsafe and feared pulling the trigger, the reasonable course would have been to avoid handling or loading the weapon altogether—especially on a crowded a crowded train. Instead, his actions directly contradicted those supposed concerns.

Hetzel's actions demonstrate poor judgment and a disregard for the safety of the community, a willingness to endanger the public despite knowing the risks associated with the

firearm. A loaded or potentially defect firearm on a crowded commuter train presents an extreme threat of harm, whether through intentional use, accidental discharge, or mechanical malfunction.

Notwithstanding the gravity of Hetzel's actions and the danger he presents, Hetzel also poses a risk of nonappearance. Hetzel attempts to attribute his conduct to an alleged substance abuse problem. However, at the time of his arrest and his appearance at Superior Court on or about May 18, 2026, Hetzel was interviewed and drug tested by Pre-trial Services. He informed Pre-trial at the time that he did not have a substance or alcohol abuse problem. In fact, he tested negative for a wide range of substances by Pre-trial services. Now, conveniently Hetzel claims a drug addiction is the reason for previous his nonappearances and noncompliance with the court. Regardless, any alleged drug problem does not excuse or mitigate his decision to knowingly possess and load a firearm as a convicted felon while aboard public transportation. Nor does a placement in a treatment facility adequately address the Court's concerns regarding public safety or future compliance. A proposed placement does not ensure, upon his release from that program, that Hetzel will appear for future proceedings or refrain from further criminal conduct upon release. In fact, Hetzel purported that he was previously in drug treatment prior to the incident and that he received help. Clearly, such drug treatment programs have done nothing to dissuade his actions and continued criminal behavior.

## **CONCLUSION**

Hetzel is eligible for and should be detained pending trial. All four of the Bail Reform Act factors weigh heavily in favor of pretrial detention, and Hetzel poses a risk of danger to the community and substantial risk of flight if he is released pending trial in the case.

For these reasons, the government requests that Hetzel be detained pending trial and that Magistrate Judge Harvey's release order be stayed pending that hearing.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:    */s/ Lauren Ibanez*
LAUREN IBANEZ
Assistant United States Attorney
NJ Bar No. 261642019
601 D Street NW
Washington, D.C. 20530
Phone: 202-252-7566
Lauren.ibanez@usdoj.gov

14